283 So.2d 333 (1973)
STATE of Louisiana In the Interest of Trina T. JOHNSON.
No. 5872.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
*334 David Band, Jr., of Shiell, Band & Hopkins, New Orleans, for appellant.
Anthony J. Russo, New Orleans, for appellee.
Before LEMMON, J., and FEDOROFF and GAUTHIER, JJ., Pro Tem.
LEMMON, Judge.
This is an appeal by the paternal grandparents of the juvenile, Trina T. Johnson, from an order removing the child from their custody and awarding custody to the child's mother.
When Trina was born on June 22, 1969, the mother was 17 years of age and unmarried. Trina was her second illegitimate child, the first having been placed in the care of an aunt. Nine days after Trina's birth, the mother placed the infant in the home of the paternal grandparents, where she lived thereafter.
On August 27, 1971, the State of Louisiana instituted these proceedings by filing a petition in the Juvenile Court for the Parish of Orleans. The petition stated that:
"* * * she (Trina) was alleged to be a neglected child, on or before May 26, 1971, R.S. 13:1570 [subd.] A.(1), inasmuch as she is without proper parental care, custody, support or supervision."
No attempt was made to notify the mother of the proceedings, nor was an attorney appointed to represent her. After the grandmother testified that the father was in school in Mississippi and the mother's whereabouts were unknown, the trial judge placed Trina in the temporary custody of the grandparents, "pending further orders of the Court."
The mother subsequently filed a motion to obtain custody.[1] An ad hoc juvenile judge conducted a full hearing on June 30, *335 1972. The mother was then married, but separated from her husband, and was residing with her other two children in her aunt's home. She testified that she was to begin a job as a nurse's assistant at a local hospital the next week.
Remarking that stability was an important consideration and noting that the sickly child had required extensive and costly medical care, the trial judge continued Trina's temporary custody with the grandparents, but provided for periodic visitation by the mother. His order further provided:
"Case to be re-set for further hearing and disposition by the Probation Department when (the mother) is able to provide a suitable home for her child."
A probation officer thereafter followed the case. At a hearing on March 29, 1973 before the regular juvenile judge, the officer testified briefly, noting that until January the mother had worked at a supermarket and had moved into the house next to her aunt's residence. The officer recommended that custody be returned to the mother and that visitation rights be established for the grandparents.
The mother also testified briefly, stating that she was then earning $32.00 per week as a domestic worker to support herself and her other two children and was still separated from her husband. The trial judge interrupted cross-examination of the mother and refused to hear further evidence, ruling that he had decided to follow the recommendation of the probation officer.
From that judgment the grandparents sought writs of certiorari to this court and to the Supreme Court, on the basis that they had no right to a suspensive appeal and that the trial court had failed to apply the proper burden of proof.[2] The applications were denied, but this court granted a preferential hearing because of the nature of the action.
The order issued by the ad hoc judge perhaps indicated that when the case was reset, disposition was to be made by the Probation Department. However, the function of the Probation Department is to investigate and report facts and not to adjudicate legal relationships based on those facts. Adjudication is a function of the judiciary.
In order to adjudicate a case involving the custody or change of custody of a juvenile, the trial judge must conduct a full evidentiary hearing. When an adjudication is based almost entirely on a social worker's recommendation (as the judge stated he did in this case) rather than on the facts developed by the officer's investigation and on other relevant evidence, there are no facts in the record for purposes of appellate review. More importantly, the losing party has been denied the procedural due process requirement of an opportunity to be heard.
In the present case the social worker on direct examination presented meager facts and stated her conclusion. Counsel for the grandparents was deprived of full cross-examination and thus of the opportunity to develop facts favorable to their position. When the mother testified, she indicated a different job situation from that reported by the social worker, but counsel was cut off before he could inquire as to her present residence or other relevant facts. Furthermore, the grandparents were deprived of any opportunity to present their own evidence on the moral, physical or mental fitness of the mother or other *336 issues pertinent to a determination of custody. The child was thus removed from the stable environment she had enjoyed since birth without a full presentation of facts necessary to establish that the change of custody was in the best interest of the child.
The case must be remanded for a full and immediate evidentiary hearing on all facts relevant and pertinent to the determination of the issue of custody of the juvenile. In the meantime the custody of the child reverts to the status prior to the March 20, 1973 order, which is herein annulled.
Accordingly, the judgment of the trial court is annulled and set aside, and the case is remanded for a hearing in accordance with this decision.
Judgment annulled and set aside case remanded.
NOTES
[1] When the juvenile court obtains jurisdiction in the case of a child pursuant to R.S. 13:1570, that court retains jurisdiction until the child reaches 21 years of age or is discharged by the court. R.S. 13:1572. See also Const. art. 7, § 52, which authorizes the Legislature to provide for juvenile court jurisdiction in the cases of children brought before these courts as neglected children.
[2] The application urged that the court failed to apply the rule recently restated in Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971), that when the court has previously made a decree of permanent custody, the party seeking a change has a heavy burden of proving that the continuation of the present custody is so deleterious to the children as to justify removing them from the environment to which they are accustomed. This contention addressed itself to the merits of the appeal.