### WITSON v. Succession of STARING.

### No. 1732.

Court of Appeal of Louisiana.
First Circuit.

June 30, 1937.

Fred G. Benton, of Baton Rouge, for appellant.

J. Elton Huckabay, of Baton Rouge, for appellee.

LE BLANC, Judge.

Stated as briefly as possible, the facts, as they appear from the plaintiff's petition in this suit, are as follows:

On February 6, 1932, at a public sale conducted by the sheriff of Iberville parish, at the instance of the legal representatives of the succession of Houston L. Staring, plaintiff became the purchaser of a certain tract of land situated in the said parish for which she paid the price of adjudication, to wit, the sum of $667. This sum of ·money was subsequently turned over by the sheriff to the legal representatives of the succession and on March 12, 1932, there was a deed made by him purporting to vest plaintiff with title to the property. Plaintiff then alleges that "under this title and the proceedings leading up to the sale and purchase of the said property, as shown, the title was warranted as representing an asset of said estate, and petitioner presumably became the owner of the fee by a warranty deed."

After the execution of her deed and the recordation thereof, the property involved became the subject of a lawsuit between the plaintiff and other parties who claimed to be the owners thereof and which resulted in a final judgment which, as plaintiff alleges in her petition herein, recognized and confirmed title to the whole of the said property in the said other parties, "and thereby completely evicted petitioner from said property, and finally terminated any and all rights petitioner had therein."

' According to further allegations appearing in plaintiff's petition, although the legal representatives of the succession of Houston L. Staring had qualified as long ago as June 14, 1928, no accounting was ever made prior to July 17, 1936, at which time she sought, by rule nisi taken against them, to have an accounting made.

Upon an order and decree granted on the rule thus taken, the legal representatives of the succession petitioned the court to have a new inventory and appraisal of the properties belonging to the estate made, and there was listed, in what plaintiff alleges she believes to have been and was intended to be a supplemental inventory to fix the value thereof, a certain judgment in favor of the decedent, in the sum of $5,000. The said judgment was inventoried at $300, but has since been sold at public auction for the sum of $500.

In her petition, plaintiff represents that in further response to the rule for an accounting, the legal representatives of the succession filed what they styled a provisional account in which they had shown that the total assets of the estate amounted to the sum of $667 cash, and had listed debts aggregating the same sum. She alleges that "as a matter of fact, the $667.00 paid by petitioner to the sheriff of Iberville, as shown, was received by said legal representatives, and treated as cash belonging to the estate, and was paid out by the said legal representatives, in accordance with the said provisional account, without the said parties having filed any account, and without their having sought the approval of the court, or taking any other steps to justify any such payment."

It is further made to appear that on October 19, 1936, plaintiff filed an opposition to the provisional account, as presented by the legal representatives of the succession, in which she sought to have them show the full amount of cash received by them, including the $500 from the sale of the judgment referred to, and in which she further sought to be placed on the said account for the sum of $667 which, she claimed, ought to be returned to her by preference and priority over all other items listed therein. Upon learning however, that her opposition to the account could not be supported, as the same amounted, in law, to an action in revendication, she withdrew the same and in-

stituted the present suit as an action of that character in which she prays for judgment ordering the legal representatives of the succession to pay and return to her the said sum of $667, erroneously received by them, out of the funds in their hands by preference and priority over any and all claims, preferred and otherwise, against the said estate.

Mrs. Margaret Lill Staring and George B. De Russy, testamentary executrix and executor, respectively, of the estate of Houston L. Staring, made defendants herein, filed an exception of no cause and no right of action which the lower court sustained, and judgment was rendered dismissing the plaintiff's suit. Upon rehearing however, the judgment was amended to the extent that it sustained plaintiff's cause of action as an ordinary action in warranty. In so far as it had dismissed the action as one in revendication, it was reinstated and reaffirmed. Plaintiff then took this appeal.

Counsel for plaintiff contends that the remedy here asserted by an action in revendication is the one suggested, if not pointed out, by the court in the case of Succession of Glover (Orleans App.) 153 So. 496, 499, and the cases cited in the opinion therein handed down. But all that was held in those cases, as we view them, was that the demands made by the opponents, claiming specific property in the succession proceedings, could not be presented by means of an opposition to the accounts filed by the legal representatives of the succession. In the very case, Succession of Glover, supra, there was a possibility of the fund claimed being withdrawn from the jurisdiction of the court, and, in commenting on the complaint made by the opponent to the effect that if she could not proceed by opposition, she would be without redress, the court stated: "If that be true then that is a situation which cannot be altered or affected by this or any other court. We are not permitted to create remedies or to grant rights which our laws do not afford." True, it was suggested that the fund, being within the jurisdiction of the court, its removal might be prevented by requesting a stay of further proceedings on the account pending the determination of the claim "properly presented in a suit of different character" as was done in the Succession of Amelia Sanchez, 41 La.Ann. 504, 6 So. 791. But the court did not presume to point out what the character of that suit should be. Neither in the Succession of Sanchez did the court specify what the form of proceeding should be.

The courts, as intimated in Succession of Glover, do not consider it their function to suggest or create remedies where where the law does not specifically provide one in a particular case. This, no doubt, for the very good reason that the nature and form of the remedy depends in each case on the nature and character of the demand. It may be that in Succession of Glover and Succession of Sanchez, where the opponents were claiming some specific property inventoried in the succession proceedings, and which property was shown to be in the possession of the representatives of the succession, revendication was the proper form of action. On the other hand, in Succession of Scott, 41 La.Ann. 668, 670, 6 So. 792, it would appear that an action of nullity might have been the proper form for the opponent to pursue. In Succession of McKnight, 44 La. Ann. 399, 400, 10 So. 810, the court intimated that the opponent might have a cause of action for illegal or wrongful acts of an administrator of a succession which can be urged in a direct suit.

The instances cited are sufficient, we believe, to bring out the point we make that, in each case, the form of the action must partake of the nature of the demand, and in the case presently before us, as we construe the plaintiff's demand for redress, from the allegations made in her petition, we are by no means convinced that her cause of action, if she has any, is one in revendication, such as it is denominated by her counsel. The tenor of her petition is that the legal representatives of the Succession of Staring represented, by advertisement of a public sale, that the estate owned, as an asset, a certain piece of real estate in Iberville parish, which she purchased from them and paid $667 in cash for. That after she had paid her money and had had a warranty deed executed, vesting title in her, she was "entirely evicted" therefrom, as the property was by judgment of court decreed to belong to someone else. From this it would appear to us that she is an evicted purchaser with a warranty of title, and, as such, her remedy against the seller is pointed out by article 2506 of the Revised Civil Code. That article reads as follows:

"When there is a promise of warranty, or when no stipulation was made on that

subject, if the buyer be evicted, he has a right to claim against the seller:

"1. The restitution of the price.

"2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.

"3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.

"4. The damages, when he has suffered any, besides the price that he has paid."

The article prescribes the simple remedy known as the action in warranty, and it is to be noted that it does not provide, and neither does any other law, as far as we are able to ascertain, a privilege of any sort in favor of the evicted buyer against the seller, such as plaintiff is seeking to have enforced in this suit.

That the plaintiff appreciated to some extent, that her action was one in warranty, appears from her motion for rehearing in the district court in which she sets out in the alternative that her petition alleges every essential fact to support that form of action and that the court is justified in maintaining it as such under her prayer for general relief. The district judge agreed with her in this and his judgment on rehearing in which he sustained her cause of action to that extent is no doubt correct.

But let us assume, for the sake of argument, that the action is one in revendication and consider the petition in the light of such a proceeding.

■ The word "revendication" has the same meaning in law as in ordinary speech. In Smart v. Bibbins, 109 La. 986, 34 So. 49, the court states that it means "to reclaim; to demand the restoration of." To reclaim is to claim something back. Something which is in the possession of another, but which is yours. With this thought in mind, the question which first suggests itself in this case is, what is it that this plaintiff is seeking the revendication of? Naturally it is the sum of $667 which she paid to the Succession of Houston L. Staring and for which she received nothing in return. Assuming further, that a sum of money, like any other object or property, real or personal, can be the subject of a claim in revendication, does it not follow that that sum of money, like any other object or property, must be shown to be in the possession of the party from whom it is demanded so that it can be revendicated? It stands to

reason that it must, for otherwise how could it be restored? Still, in her petition, the plaintiff shows just the opposite, for, as already indicated in one of the allegations which we have quoted, her $667, which were received by the legal representatives of the Succession of Staring, were paid out by them, in accordance with a provisional account filed by them in the succession proceedings. If this fund had been paid out it was no longer in the possession of the representatives of the succession, and therein lies the important difference between the plaintiff's case and that of the opponent in the Succession of Glover, supra, granting that the proper remedy in that case would have been an action in revendication. In that case, the opponent had charged that the succession was "actually possessed of property belonging to her," and it was because of this very charge of actual possession of her property by the succession that the court mentioned that her claim was one "for revendication; for delivery of something she owns."

■ But counsel for plaintiff contends that it is shown by the petition that the succession has funds in its possession to the extent of at least $500, and it is argued, in effect, that, as all money has the same value, one dollar having exactly the same legal and other significance as any other dollar, it is not right in a claim for revendication, where the object claimed is a sum of money, to restrict it to the identical dollars involved in the transactions, for to do so in such cases would be to practically deny the claimant that form of relief. For our part, we are unable to appreciate why there should be any difference in an action of revendication involving a sum of money and one involving any other object. The case Succession of Sanchez, 41 La.Ann. 504, 6 So. 791, is not authority for the making of any such distinction. This line of argument adds to the doubt we have that the action of revendication can apply in all cases where a sum of money is the object of the claim. In cases where the fund has been earmarked or can be identified, the matter of restoring it to its proper owner, when he demands it, may be simple enough, but where it has been dissipated and the claimant has to seek its restoration from some other funds in the hands of the one from whom he is claiming, which funds may be held subject to liens and privileges in favor of other parties, then we say undoubtedly that the action in revendication does not apply, and the judgment of the lower court,

which dismissed plaintiff's demand as such, on an exception of no cause of action, was correct, and it is accordingly to that extent also affirmed.

Judgment affirmed.